IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NYOKA COMPAGNO, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | |
| | § | 1:23-CV-01068-ADA |
| TEXAS HEALTH AND HUMAN | § | |
| SERVICES COMMISSION, | § | |
| DEFENDANT. | § | |
| | § | |
| | § | |

## ORDER

Before the Court is Defendant Texas Health and Human Services Commission's ("Defendant" or "HHSC") Motion for Summary Judgment. Dkt. 32. The Court has reviewed the Motion (Dkt. 32), Plaintiff Nyoka Compagno's ("Plaintiff" or "Compagno") Response in Opposition (Dkt. 36), and Defendant's Reply (Dkt. 39), as well as the applicable law and facts of the case. The Court finds that the Motion should be **GRANTED**.

## I.    BACKGROUND

This is a Title VII employment retaliation case brought by Nyoka Compagno. Compagno was a charge nurse at the Austin State Hospital ("ASH").  Dkt. 36 at 3. The Austin State Hospital ("ASH") is overseen by Defendant HHSC and is a psychiatric hospital focused on treating and stabilizing patients with acute psychiatric illnesses. Dkt. 32 at 3. ASH treats patients that have been involuntarily committed by the court or requested voluntary admission. Dkt. 36 at 3. The nurses and other employees at ASH work with patients who exhibit a wide range of problematic behaviors and acts of psychosis. In working to treat and rehabilitate patients, staff are trained to use a variety of tools, including de-escalation procedures. *Id.*

When a patient is an imminent harm to themselves or others, staff are trained to use varying

1

levels of holds and restraints, depending on the severity of the behavior. *Id.* However, restraints are used as a last resort, and a restraint chair can only occur after a personal hold is shown to be ineffective to stop ongoing harm. *Id.* A nurse who has passed the restraint training program is deemed "clinically competent" and has the authority to initiate a restraint without a physician's prior approval. *Id.* at 4. But that nurse must get an order from a physician within sixty minutes of the restraint authorizing it. *Id.*

In August 2018, a patient was admitted to ASH. *Id.* The patient exhibited unique behaviors and had a tendency to undress and go after the staff, grabbing their genitals. *Id.* Starting around September 2019, the patient began exhibiting aggressive, sexual behavior toward staff and other patients that required multiple holds and restraints. *Id.* Compagno reported the patient's harassing behavior and voiced concerns about the safety of her staff and her perceived need for the patient to be transferred to a better equipped unit. *Id.* at 5. Compagno made these reports to Marshall Smith, Assistant Director of Nursing, and Yukari Jarmon, Compagno's shift supervisor. *Id.* at 5-6.

On December 19, 2026, Compagno submitted her resignation in anticipation of possibly relocating states. *Id.* at 6.[1] Her resignation date was set to be March 1, 2020. *Id.* Compagno's situation changed and she orally informed the Assistant Director of Nursing Jarmon that she rescinded her resignation on December 30, 2019. *Id.*

On January 8, 2020, Cristyn Cordova, Director of Social Work, Robert Nottebart, Director of Client Rights, and Parker Lacombe, Director of Peer Support, visited the particular patient's unit after noticing the excessive number of restraints in the patient's daily clinical reports. Dkt. 32

---

[1]The parties' accounts differ: HHSC asserts that Compagno personally handed her supervisor, Nurse Manager Philip Johnson, her resignation. Dkt. 32 at 6. Compagno asserts it was submitted to Assistant Director of Nursing, Yukari Jarmon. Dkt. 36 at 6. This distinction does not affect the Court's ultimate conclusion.

at 4. Compagno was the charge nurse on that date. *Id.* During that visit, Cordova reported that the patient was again restrained in a restraint chair. *Id.* Compagno alleges that the patient was demonstrating hostile behavior toward the staff—which was not witnessed by the directors because they were not facing the room where the events occurred. Dkt. 36 at 6. Both factual accounts explain that Cordova witnessed the restraint. Cordova reported that Compagno stated she "[didn't] have time" to do detailed restraint notes for each restraint—even though they are required. Dkt. 32 at 5. Cordova reported that Compagno appeared to be improperly restraining the patient for convenience, even though he appeared to be calm while being restrained. *Id.* Cordova emailed executive leadership with her concerns. *Id.* at 6.[2]

On January 9, 2020, Philip Johnson, Nurse Manager Compagno's supervisor, along with Jarmon, met with Compagno to inform her she was being placed on emergency leave pending an investigation. *Id.* At ASH, a supervisor has the discretion to place an employee on emergency leave whenever there is a credible patient abuse allegation against an employee—as there had been on both December 24, 2019, and January 8, 2020. *Id.* Johnson determined emergency leave was appropriate after reviewing footage from both dates and determining along with Marshall Smith that the footage did not show valid reasons for restraint. *Id.*

At the January 9 meeting, Johnson informed Compagno that she was being placed on emergency leave until March 1, 2020—which was set to be her last date of employment per her resignation letter. *Id.* at 7. Compagno informed Johnson that she had rescinded her resignation verbally to Jarmon. *Id.* Johnson informed Compagno that they did not accept her recission—in part because it was made verbally to her shift supervisor who lacked authority to make that

---

[2]Compagno was also alleged to have abused the patient on December 24, 2019, but the investigator from the Office of Inspector General, Texas Health and Human Services determined there was no evidence of physical abuse after conducting an investigation. Dkt. 26 at 8.

decision, and in part because of the abuse allegations and Johnson's determination about improper restraints. *Id.*

Compagno filed a charge with the Equal Employment Opportunity Commission alleging that she was retaliated against because she "repeatedly complained of sexual harassment/abuse towards [herself] and [her] staff in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id.* Compagno eventually brought this suit, alleging gender discrimination under Title VII and retaliation under Title VII. Dkt. 1 ¶¶ 37-49. Compagno's sex discrimination claim was subsequently dismissed, the district judge finding that because the patient groped staff members without regard to their gender or sex (both men and women complained) there were no allegations that she was treated differently than men when she complained and her supervisors "did nothing" to correct the situation. *See* Dkt. 12. Defendant filed this Motion for Summary Judgment, arguing it is entitled to judgment on Compagno's retaliation claims.

## II.    LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 880 (5th Cir. 2014). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets this burden, the nonmoving party must come forward with specific facts that establish the existence of a genuine issue for trial. *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (quoting *Allen v. Rapides Parish*

*Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Hillman v. Loga*, 697 F.3d 299, 302 (5th Cir. 2012) (quoting M*atsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

In deciding whether a fact issue has been created, the court must draw all reasonable inferences in favor of the nonmoving party, and it "may not make credibility determinations or weigh the evidence." *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form. *See* FED. R. CIV. P. 56(c); *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *United States v. Renda Marine, Inc.*, 667 F.3d 651, 655 (5th Cir. 2012) (quoting *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003)).

## III.    DISCUSSION

When a plaintiff asserts retaliation related to her employment but provides only circumstantial evidence to support her claims, we invoke the burden-shifting analysis from *McDonnell Douglas Corp. v. Green. Cooper v. Dallas Police Ass'n*, 278 Fed. Appx. 318, 319 (5th Cir. 2008) (citing 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

The plaintiff must first establish a prima facie case of retaliation under Title VII, which has three elements: "(1) the employee engaged in [an] activity protected by Title VII; (2) the employer took [an] adverse employment action against the employee; and (3) a causal connection exists between          that protected activity and

the adverse employment action." *Id.* (citation omitted). If the plaintiff successfully establishes a prima facie case, the burden then shifts to the employer to provide a "legitimate, nonretaliatory reason for the adverse employment action." *Id.* (citation omitted). If the employer asserts a nonretaliatory explanation, the plaintiff's prima facie case disappears, and the plaintiff must show that the given reason is merely a pretext for retaliation. *Id.* (citing *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817).

Plaintiff's retaliation claim alleges that she "engaged in protected activity when she complained of sexual harassment by one of her patients." Dkt. 1 ¶ 45. An employee has engaged in activity protected by Title VII if she has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a). *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996). The opposition clause of § 2000e–3(a) requires the employee to demonstrate that she had at least a "reasonable belief" that the practices she opposed were unlawful. *Id.* (citing *Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1140 (5th Cir.1981)).

Additionally, the Fifth Circuit has consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity. *See e.g., Davis v. Dallas Indep. Sch. Dist.*, 448 Fed. Appx. 485, 493 (5th Cir. 2011). The employer should be put on notice that the complaint is based on discrimination in violation of Title VII. *See Harris-Childs v. Medco Health Sols., Inc.*, 169 Fed. Appx. 913, 916 (5th Cir. 2006). In *Harri*s, an employee's failure to specifically complain of racial or sexual harassment, complaining only of "harassment," did not put her employer on notice that her complaint was based on racial or sexual discrimination, so she

did not engage in a protected activity for the purposes of her retaliation claim. *Id.*

Here, Compagno complained about the patient "going after" and trying to grab nurses inappropriately. Arguably, she did explain that she was experiencing "sexual harassment," along with her other nurses both male and female. However, reporting patient behavior was a required part of Compagno's job duties. Dkt. 32 at 11. And advocating for the patient to be moved to a different unit was likewise a component of Compagno's job duties as a nurse at ASH. *Id.*

Moreover, reporting sexual harassment from a psychiatric patient does not constitute an "unlawful employment practice," even if Compagno asserts that her supervisors "failed to respond" to her complaints. Title VII prohibits "unlawful employment practices" consisting of discrimination based on an individual's "race, color, religion, sex, or national origin." *See* 42 U.S.C.A. § 2000e-2. Complaining about a psychiatric patient sexually assaulting men and women alike, within the job duties of a psychiatric hospital charge nurse, cannot reasonably be related to an "unlawful employment practice" under Title VII. Compagno's complaints did not distinguish how she was being sexually harassed because of her sex. Quite the opposite—they demonstrated that both sexes were treated equally by the patient at issue. Therefore, Compagno has not established that she engaged in any protected activity. Her prima facie case therefore fails.[3]

Separately, the Court also finds that Defendant is entitled to summary judgment based on its legitimate, non-retaliatory explanation for Compagno's adverse employment

---

[3]The Court accepts Compagno's argument that refusing to accept her recission of resignation constitutes a materially adverse employment action for the purposes of establishing the second element of her retaliation claim. Additionally, the Court accepts that Compagno's temporal argument (Dkt. 36 at 15) to support the causation element of her retaliation claim is sufficient at this stage, as the four-month passage is likely sufficient to support a causal link.

action—which Compagno did not show was pretextual. Even if Compagno had made a prima facie retaliation claim, Defendant has demonstrated that the decision to refuse her resignation recission was supported by two separate non-retaliatory reasons: (1) the recission was not made to the proper supervisor or in the proper manner, and (2) Compagno was placed on emergency leave based on the two separate incidents of improper restraint. Neither of those reasons have any connection to Compagno's complaints of being sexually harassed by the patient—they were (1) procedural and (2) disciplinary for independent reasons, respectively.

HHSC has articulated a legitimate, non-retaliatory reason for its actions. Thereafter, Compagno failed to "adduce sufficient evidence that the proffered reason is a pretext for retaliation." *See Awe v. Harris Health Sys.*, 163 F.4th 969, 974 (5th Cir. 2026) (citation omitted). Compagno's argument for pretext argues about how other nurses were involved in the restraints, but she was the only one reported for patient abuse. Dkt. 36 at 17. Compagno was the nurse in charge during the relevant times and Johnson's independent review of the footage supported his decision to place Compagno on emergency leave. Further, Cordova's report to Johnson implicated Compagno for making statements about using restraints without following proper record-keeping procedures. Even though a separate investigator reviewed footage from December 24 and determined there was no patient abuse, that alone does not prove Johnson's review of security footage as Nurse Manager could not differ based on his own training. Compagno's arguments do not establish that HHSC's reasons were pretextual. Therefore, HHSC is entitled to summary judgment on Compagno's retaliation claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Texas Health and Human Services Commission's ("Defendant" or "HHSC") Motion for Summary Judgment (Dkt. 32) is **GRANTED.**

**IT IS SO ORDERED.**

**SIGNED** on April 10, 2026.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE